UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF TUKOYO MOORE, *et al*,                    Case No. 21-12267

      Plaintiffs,                                    F. Kay Behm
v.                                                  United States District Judge

CITY OF WARREN, *et al*,

      Defendants.
_____ /

**OPINION AND ORDER ON MOTIONS FOR SUMMARY
JUDGMENT AND MOTION TO DISMISS (ECF Nos. 53, 60, 63)**

I.      **PROCEDURAL HISTORY**

Plaintiff, the Estate of Tukoyo Moore, (the Estate) and Katrina Evans,

individually and as personal representative of the Estate, filed a civil rights action

pursuant to 42 U.S.C. § 1983 against Defendants on September 27, 2021. (ECF

No. 1). Plaintiffs filed an amended complaint on May 9, 2023. (ECF No. 46).

Defendants are the City of Warren and Christopher Skridulus, a police officer

employed by the City of Warren. Plaintiffs assert a state law conversion claim

against Skridulus only, Fourteenth Amendment Substantive and Procedural Due

Process and Fifth Amendment Takings claims against both Defendants, and a

*Monell* claim against the City of Warren. *Id*. Defendants filed an answer and

counterclaim for civil forfeiture under the Michigan Controlled Substances

Act.  (ECF No. 51, 52).  Plaintiffs filed a motion to dismiss the countercomplaint.

(ECF No. 53).  The parties filed cross-motions for summary judgment.  (ECF Nos.

60, 63).  The court held a hearing on these matters on January 24, 2024, via video

teleconference.

For the reasons set forth below, Plaintiffs' motion to dismiss the

countercomplaint is **GRANTED**, Plaintiffs' motion for summary judgment on the

countercomplaint is **DENIED** as moot, and Defendants' motion for summary

judgment on the takings claim, the *Monell* claim, and the conversion clam is

**GRANTED**, but their motion for summary judgment on the substantive and

procedural due process claims is **DENIED** as to the Estate only.  Finally, Katrina

Evans' due process claims are **DISMISSED**.  Because none of the claims brought by

Evans individually survive, she is **DISMISSED** as a Plaintiff in this matter.

## II.    FACTUAL BACKGROUND

On October 1, 2020, Detroit Police Officers arrived at the legal address of

decedent, Tukoyo Moore ("Moore"), 2199 Otis Avenue, Warren, MI 48091 (the

"Otis Ave. Property") to conduct a death notification as part of a homicide

investigation.  (ECF No. 60-2, Warren Police Report, COW 000127–000282).  Prior

to their arrival, the Detroit Police discovered Moore's deceased body in a burned

vehicle in the City of Detroit.  Authorities were led to the Otis Ave. Property as it

was Moore's residence.  *Id*.  Upon arrival at the Otis Ave. Property, police officers

found the front door ajar, but received no responses to knocks at the door.  *Id*.
The Detroit Police requested assistance from Warren PD.  *Id*.

Warren PD officers arrived at the Otis Ave. Property, were briefed by the
Detroit Police, and entered the home to perform a protective sweep.  *Id*.  The
bodies of a female identified as Isis Rimsom and the minor son of Moore were
found in the basement of the home and it appeared that both had been
murdered.  *Id*.[1]  A search warrant for the Otis Ave. Property was obtained and
executed the same day.  *Id*.  During the execution of the search warrant, items of
personal property were seized by the Warren PD, tagged as evidence, and
properly stored pursuant to established department procedures.  Multiple
firearms, drugs and drug paraphernalia including a scale, baggies, a container with
suspected fentanyl, and a plate with drug residue were seized.  *Id*. at COW
000139, 179, and 235.  Lab testing later confirmed the suspected drug substances
to be fentanyl.  *Id*. at COW 000269.  The property at issue in this case, all of which
was located and seized within, according to Defendants, close proximity to drugs
and drug-related items within the Otis Ave. Property, is as follows:

> Cell phones and phone cases; a WiFi Router and laptop;
> a yellow bag with money; a safe containing money; a

---

[1] Nicholas Bahri was later charged and convicted for the three murders.  (ECF No. 60-2, COW 000128-129; Michigan Court of Appeals Docket No. 362130, *People of the State of Michigan v. Nicholas Raad Bahri*).  According to the docket in the Macomb County Circuit Court, the jury rendered its verdict on April 22, 2022.

wallet containing money; a brown purse containing
approximately $605; and paperwork, documents and a
jacket.

(ECF No. 46, ¶ 11).  Plaintiffs allege the yellow bag contained "approximately

$30,000," that the safe contained "approximately $170,000," that the wallet

contained $127, and that the purse contained $605.  *Id.*  Defendants' records

show that the yellow bag contained exactly $12,900.00 (ECF No. 60-2, at 000142);

the safe contained exactly $43,270.00 (*id*. at COW 000222, 256); the wallet

contained $127.00 (*id*. at COW 000153); and the purse contained $610.00 (*id*. at

COW 000152).

During the search of the Otis Ave. Property, officers observed the home

appeared to have been ransacked.  When searching the basement, officers

observed a plate on a table with white power on it and, nearby, a scale and

baggies.  (ECF No. 60-2, at COW 000179).  Officers believed the powder to be

heroin, though lab testing later confirmed it was fentanyl.  (*Id*. at COW 000269).

Officers also located a yellow bag in the nearby basement ceiling rafters

containing $12,090.00, which was seized and tagged as evidence (ECF No. 60-5,

Evid. Tag No. 200046260.021).  A small safe was located behind the nearby

basement furnace vent and tagged as evidence (Evid. Tag No. 200046260.014),

but no key was located, so the safe's contents were unknown at the time.  On

October 12, 2020, Warren Police officers were able to overcome the lock on the

small safe.  According to Defendants, the contents included $43,270.00 in cash, a

Rolex watch and a gold necklace (Evid. Tag No.'s 200046260.149 and .148,

respectively).  (ECF No. 60-2, at COW 000168–169).

The City of Warren published for 10 consecutive days a Notice of Seizure

and Intent to Forfeit, pursuant to Mich. Comp. Laws § 333.7523(1)(a).[2]  (ECF 60-2,

at COW000637–640).  Having received no written claims, this currency was

removed from the Warren Police Department Property Room and delivered to

the City of Warren Treasurer where it was again counted and placed into the

custody of the Treasurer pursuant to Mich. Comp. Laws § 333.7523(d) and

§ 333.7524(b).  (ECF Nos. 60-5, 68, 69).  The Estate of Tukoyo Moore was not filed

until Dec. 8, 2020, which was after completion of the forfeiture publication.  (ECF

No. 58-4).

The classification by type, intake, storage and disposition of property by

Warren PD is governed by the Department's Procedure 20-47, Property &

Evidence Procedures.  (ECF 60-3, Procedure, at COW 000784–795).  According to

Defendants, all property listed in ¶ 11 of the amended complaint is classified as

"Evidence" pursuant to Procedure 20-47.  (ECF No. 60-2, PageID.2348-89, 2409-

10; ECF Nos. 60-5, 68, 69). Pursuant to Mich. Comp. Laws § 780.655 and

---

[2] This provision applies where the property value does not exceed $50,000.  Mich.
Comp. Laws § 333.7523(1).  Thus, its applicability here is questionable.

Procedure 20-47, property obtained as the result of a search warrant "shall be safely kept by the officer so long as necessary for the purpose of being produced or used as evidence in any trial."  The case of *People of the State* of *Michigan v. Bahri*, Michigan Court of Appeals Case No. 362130 resulted in conviction, but the appeal remains pending.  (ECF 60-4)  Procedure 20-47 contemplates the release of property to the known owner upon determination by the Officer in Charge, and, in the case of monetary property dispositions, upon approval of the Police Commissioner.  According to Defendants, Plaintiffs have not established that they are the owner(s) of the personal property to the exclusion of any other person, and the evidence as enumerated in Plaintiffs' amended complaint remains safely kept by the Officer in Charge.  (ECF No. 69, Audit Trails for Evidence Tag numbers).  The property remains in the possession, custody and control of the Warren PD pending the disposition of Bahri's appeal as required by Mich. Comp. Laws § 780.655.  *Id.*

III.   **ANALYSIS**

   A.   Standards of Review

      1.   *Motion for Summary Judgment*

   When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party

asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the

jury could reasonably find for the plaintiff.'"  *Brown v. Scott*, 329 F. Supp. 2d 905,

910 (6th Cir. 2004).  In order to fulfill this burden, the non-moving party only

needs to demonstrate the minimal standard that a jury could ostensibly find in his

favor.  *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797,

800 (6th Cir. 2000).  However, mere allegations or denials in the non-movant's

pleadings will not satisfy this burden, nor will a mere scintilla of evidence

supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 251.

The court's role is limited to determining whether there is a genuine

dispute about a material fact, that is, if the evidence in the case "is such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477

U.S. at 248.  Such a determination requires that the court "view the evidence

presented through the prism of the substantive evidentiary burden" applicable to

the case.  *Id*. at 254.  Thus, if the plaintiff must ultimately prove its case at trial by

a preponderance of the evidence, on a motion for summary judgment the court

must determine whether a jury could reasonably find that the plaintiff's factual

contentions are true by a preponderance of the evidence.  *See id.* at 252–53.

Finally, if the nonmoving party fails to make a sufficient showing on an essential

element of its case for which it carries the burden of proof, the movant is entitled

to summary judgment.  *Celotex*, 477 U.S. at 323.  The court must construe Rule 56

with due regard not only for the rights of those "asserting claims and defenses

that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

2. *Motion to Dismiss*

In deciding a motion to dismiss under Rule 12(b)(6), the court "must construe the complaint in the light most favorable to the [nonmoving party] ... [and] accept all well-pled factual allegations as true*." League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003). The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Moreover, the complaint must "contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief, such as "when an affirmative defense ... appears on its face." *Jones v. Bock*, 549 U.S. 199, 215

(2007) (quotation marks omitted).  A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged."  *Id*. at 678.  However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Id*. at 679.  The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief."  *League of United Latin Am. Citizens*, 500 F.3d at 527.  Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6).  At the motion-to-dismiss stage, the court does not consider whether the factual allegations are probably true; instead a court must accept the factual allegations as true, even when skeptical.  *See Twombly*, 550 U.S. at 555 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *id*. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable"); *see*

*also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not

countenance ... dismissals based on a judge's disbelief of a complaint's factual

allegations").  Indeed, in assessing the sufficiency of a complaint, the court must

determine only whether "'the claimant is entitled to offer evidence to support the

claims,' not whether the plaintiff can ultimately prove the facts alleged."  *See*

*United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D.

Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

    B.    <u>Defendants' Forfeiture Counterclaim</u>

Plaintiffs have moved under Rule 12(b)(6) for dismissal of and under Rule

56 for summary judgment on Defendants' forfeiture claim.  (ECF Nos. 53, 63).

Defendants bring their forfeiture countercomplaint under the Michigan

Controlled Substances Act.  More specifically, Mich. Comp. Laws § 333.7521a

7521a(1) provides that "property may be seized as provided in section 7522 for a

violation of this article, but is not subject to forfeiture under section 7521 or

disposition under section 7524 unless a criminal proceeding involving or relating

to the property has been completed *and the defendant pleads guilty to or is*

*convicted of a violation of this article*." (Emphasis added, footnotes omitted).

According to the plain language of this provision, property seized under this Act is

only subject to forfeiture where there is a conviction under the Controlled

Substances Act.  However, no one was convicted of any violations of the

Controlled Substances Act in connection with the seizure of property under

§ 333.7522.  Bahri was convicted of multiple charges of felony firearm and

homicide, along with arson and mutilation of a dead body.  *See* Macomb County

Circuit Court Records, Case No. 2021-002220-FC *People of the State of Michigan*

*vs. Bahri, Nicholas Raad*.  Nothing in the record suggests anyone else was charged

or convicted of violation of the Michigan Controlled Substances Act as it relates to

the seizure of property at issue here.  Accordingly, the forfeiture provisions of this

Act do not apply to the property seized at Moore's residence and the

countercomplaint for forfeiture under this Act must be dismissed for failure to

state a clam on which relief may be granted.

    C.    <u>Takings Claim</u>

    Defendants move under Rule 12(b)(6) and Rule 56 to dismiss Plaintiffs' Fifth

Amendment takings claim, arguing that the seizure and retention of property in

the context of a criminal investigation, pursuant to a lawful and unchallenged

warrant, is not a taking as a matter of law.  *See e.g.*, *Bennis v. Michigan*, 516 U.S.

442, 452-53 (1996) (holding that the state's seizure and retention of property as

part of a criminal investigation is not a "taking" under the Fifth Amendment and

does not give rise to a claim for just compensation).  In response, Plaintiffs focus

their argument on Defendants' counterclaim for forfeiture under Michigan law,

and do not address the crux of Defendants' takings argument: that Defendants'

actions cannot be a taking as a matter of law.  Because the court considers

evidence outside the amended complaint, this matter will be decided under Rule

56.

As the Sixth Circuit explained in *Ostipow v. Federspiel*, 824 F. App'x 336, 341

(6th Cir. 2020), "it is well settled that a state's seizing and retaining property as

part of a criminal investigation is not a 'taking' for a 'public purpose' under the

Fifth Amendment, and thus does not give rise to a claim for just compensation."

*Id*. (quoting *Bennis*, 516 U.S. at 452–53; *see also AmeriSource Corp. v. United*

*States*, 525 F.3d 1149, 1155 (Fed. Cir. 2008) (noting that "the character of the

government action is the sole determining factor" as to whether a plaintiff may

bring a compensable takings claim)).  The court concluded that where the

government seized property pursuant to "uncontested warrants authorizing the

search and seizure believed to be involved in drug manufacturing," "claims

emanating from the use of police power are excluded from review under the

Takings Clause."  *Id*. at 342.  Instead, if someone is the victim of civil asset

forfeiture abuse, their recourse under the Constitution might be under the Due

Process Clause, not the Takings Clause.  *Id*.  Plaintiffs admit that the property was

seized pursuant to a lawful search warrant.  (ECF No. 60-8, Request for Admission

No. 2).[3]  There does not appear to be any dispute that the property at issue was seized pursuant to valid, uncontested search warrant and thus, the takings claims must fail.  Plaintiffs' argument that the "taking" was the institution of the forfeiture procedure, rather than the initial seizure pursuant to a valid warrant, is without merit, given *Ostipow*'s mandate that the proper recourse for a victim of civil asset forfeiture abuse is under the Due Process Clause, not the Takings Clause.  *See Ostipow*, 824 F. App'x at 341.  Finally, Plaintiffs' argument that Defendants were called to the scene for a murder and not a "drug bust" is immaterial.  Plaintiffs seem to suggest that a seizure based on valid search warrant only renders a takings claim invalid where the criminal investigation involved the same persons making the takings claim.  Plaintiffs offer no cases in support of this argument, and it is rejected.

---

[3] *See* ECF No. 60-8, PageID.3148:

> 2. Admit that the Defendants' seizure of the alleged property as stated in the Amended Complaint, from the house located at 2199 Otis, Warren, MI (herein the "2199 Otis Property"), was pursuant to a lawful search warrant.
>
> RESPONSE: Object to this request for admission, as it relates directly to the subject matter of Plaintiffs' motion to dismiss the counter-complaint that has been recently filed, but, Admitted with the express understanding that the search warrant was sought after the discovery of mortally wounded persons, not narcotics.

D.    Due Process Claims

1.    *Substantive Due Process*

The existence of a protected property interest turns on state law, but

"federal constitutional law determines whether that interest rises to the level of a

legitimate claim of entitlement protected by the Due Process Clause."  *Moskovic*

*v. City of New Buffalo, Michigan*, 2023 WL 8651272, at *2 (6th Cir. Dec. 14, 2023)

(quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855-56 (6th Cir. 2012)).

(internal quotation marks omitted, and citation omitted).  In *Ostipow II*, the court

explained that to prevail on a substantive due process claim, the plaintiff needed

to demonstrate a constitutionally protected interest that was infringed by

arbitrary and capricious state action.  *Ostipow v. Federspiel*, 2023 WL 6367753, at

*3 (6th Cir. Sept. 29, 2023) (citing *Golf Vill. N. v. City of Powell*, 42 F.4th 593, 601

(6th Cir. 2022)).[4]  Accordingly, the plaintiff was required to show that the seizure

_____

[4] Defendants maintain that the "shocks the conscience" standard only applies in cases
involving physical abuse or force.  As explained in *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*,
566 F. App'x 462, 472 (6th Cir. 2014), the interests protected by substantive due process are
much narrower than those protected by procedural due process and include: "interests
protected by specific constitutional guarantees; interests so rooted in the traditions and
conscience of our people as to be deemed 'fundamental rights;' and the right to freedom from
government actions so arbitrary and abusive as to 'shock the conscience.'"  *Id*. (quoting *Bell v.
Ohio State University*, 351 F.3d 240, 249-50 (6th Cir. 2003)).  The *Puckett* decision further
explained that the "shocks the conscience" standard applies in cases involving physical abuse
and in the zoning context to refer to conduct that is arbitrary in the constitutional sense.
However, in *Ostipow II*, the court of appeals relied on *Golf Village* for its substantive due
process standard, which explained that a substantive due process challenge to a zoning decision
requires a plaintiff to show that there is "no rational basis" for the decision and the level of

and retention of the family property by the state was "so brutal and offensive that [those actions] do not comport with traditional ideas of fair play and decency."  *Id*. (quoting *Golf*, 42 F.4th at 601) (brackets and quotations omitted) (citation omitted).

Defendants first argue that because the property at issue was seized pursuant to a duly authorized search warrant and because the property was seized due to its close proximity to drugs and drug paraphernalia (making it subject to forfeiture under Michigan law), its actions were not arbitrary.  In response, Plaintiffs again emphasize that the seizure was not the result of a "drug bust," that Plaintiffs have legal title to the property at issue, and the same host of arguments relating to purported defects in the forfeiture process identified in Plaintiffs' motions regarding the forfeiture counterclaim.  As set forth above, the forfeiture process Defendants utilized under the Controlled Substances Act is inapplicable.  Thus, while the initial seizure pursuant to a valid search warrant does not violate substantive due process, *Ostipow II* suggests that if the continued retention of property was arbitrary and capricious, a substantive due process claim could lie.  *Id.* at *3.  Defendants' continued retention of the property is

---

irrationality is "so extreme" that it "shocks the conscience.  *Golf Village*, 42 F.4th at 601. Accordingly, it appears that the "shocks the conscience" standard as described in *Golf Village* and *Ostipow II* applies here.

based on an inapplicable forfeiture process found in the Controlled Substances

Act.  Accordingly, Defendants' argument that it properly retained the property

under Mich. Comp. Laws § 333.7523 is without merit and summary judgment on

this claim must be denied.

 2. *Procedural Due Process*

The Due Process Clause of the Fourteenth Amendment provides that no

state shall "deprive any person of life, liberty, or property without due process of

law."  U.S. Const. amend. XIV, § 1.  "In order to establish a procedural due process

claim, a plaintiff must show that (1) he had a life, liberty, or property interest

protected by the Due Process Clause; (2) he was deprived of this protected

interest; and (3) the state did not afford him adequate procedural rights prior to

depriving him of the property interest."  *Women's Med. Prof'l Corp. v. Baird*, 438

F.3d 595, 611 (6th Cir. 2006) (citing *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir.

1999)).  "'Government employment amounts to a protected property interest

when the employee is 'entitled' to continued employment,'" and the source of

this right may be found in a written policy that allows for dismissal only for "just

cause."  *Nunn v. Lynch*, 113 F. App'x 55, 58–59 (6th Cir. 2004) (quoting *Bailey v.

Floyd Cty. Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997)).  "The 'root

requirement' of the Due Process Clause," is "'that an individual be given an

opportunity for a hearing before he is deprived of any significant property

17

interest.'"  *Medlin v. City of Algood*, 355 F. Supp. 3d 707, 714 (M.D. Tenn. 2019)

(quoting *Rodgers v. 36th Dist. Ct.*, 529 F. App'x 642, 648 (6th Cir. 2013) (quoting

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985))).  To determine the

amount of process due in a particular case, courts balance three factors: "[f]irst,

the private interest that will be affected by the official action; second, the risk of

an erroneous deprivation of such interest through the procedures used, and

probable value, if any, of additional or substitute procedural safeguards; and

finally, the Government's interest...."  *Mathews v. Eldridge*, 424 U.S. 319, 335

(1976).

As explained above, Mich. Comp. Laws § 333.7521a provides that "property

may be seized as provided in section 7522 for a violation of this article, but is not

subject to forfeiture under section 7521 or disposition under section 7524 unless

a criminal proceeding involving or relating to the property has been completed

*and the defendant pleads guilty to or is convicted of a violation of this article*."

(Emphasis added, footnotes omitted).  Here, as Plaintiffs point out, no one was

convicted of any violations of Michigan's Controlled Substances Act in connection

with the seizure of property under § 333.7522.  Accordingly, the forfeiture

provisions of this Act do not apply, and the provisions of this statute could not

provide the process due.  Neither party provides sufficient arguments regarding

what process is due under *Mathews v. Eldridge*.  As explained in *Ingram v. Wayne Co.*, 81 F.4th 604, 618 (6th Cir. 2023), under *Mathews*, the court must examine:

> (1) "the degree of potential deprivation that may be created by a particular decision," (2) the "fairness and reliability of the existing pretermination procedures, and the probable value, if any, of additional procedural safeguards," and (3) the public interest.  424 U.S. at 341–42, 346, 96 S.Ct. 893.  Our circuit requires "notice and a timely post-seizure opportunity to be heard prior to forfeiture."  [*Ross v. Duggan*, 402 F.3d 575, 583–84 (6th Cir. 2004)]; *see also* [*Nichols v. Wayne County*, 822 F. App'x 445, 450 (6th Cir. 2020)].  But this court has not definitively resolved whether an interim hearing is needed, given the long delay before forfeiture proceedings.

*Id*.  Because Defendants have not sufficiently articulated how their actions satisfied procedural due process, or indicated what process is due under *Mathews v. Eldridge*, summary judgment on this claim must be denied.[5]  *See Pewitte v. Hiniger*, 2020 WL 2218754, at *8 (M.D. Tenn. May 6, 2020), report and recommendation adopted, 2020 WL 5105404 (M.D. Tenn. Aug. 31, 2020) (Summary judgment denied where defendants have not carried their initial burden to show that summary judgment is warranted.); *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991) (holding that "a party moving for summary judgment

---

[5] Similarly, Defendants' argument that Plaintiffs were afforded an adequate post-deprivation remedy under the Controlled Substances Act also fails because that Act does not apply here.

always bears the burden of demonstrating the absence of a genuine issue as to a material fact …").

### 3.   Property Interest of Plaintiff Katrina Evans

Defendants argue that Evans does not have a valid property interest and thus, her due process claims must fail on this basis.  Evans argues that legal title of Moore's personal property vests with the estate's personal representative and equitable title vests with his heirs.  *In re Forfeiture of $234,200,* 217 Mich. App. 320, 324 (1996).  Under this theory, in order for Evans to personally establish that she has a property interest in the subject property, she must establish that she is an heir.  She cannot do so in this proceeding because the Michigan Probate Court has exclusive legal and equitable jurisdiction over all matters pertaining to the settlement of a deceased individual's estate, including the declaration of the right of any heir.  *In re Estate of Scott*, 2023 WL 8866471, at *9 (Mich. Ct. App. Dec. 21, 2023) (citing Mich. Comp. Laws § 700.1302)).  And notably, where a decedent is intestate, the decedent's children have priority as heirs before parents of the decedent.  Mich. Comp. Laws § 700.2103(a)-(b).  As counsel stated on the record at the hearing, Moore has at least one surviving child.  Evans has offered no evidence in support of her claim that she, individually, is an heir with a property

interest in the seized property.[6]  Accordingly, Evans' substantive and procedural

due process claims must be dismissed.

    E.    <u>*Monell* Claim</u>

In *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 700-01 (1978), the Supreme

Court held that municipalities are "persons" subject to suit under § 1983.

However, such a claim may only be brought when "execution of a government's

policy or custom, whether made by its lawmakers or by those whose edicts or

acts may fairly be said to represent official policy, inflicts the injury that the

government as an entity is responsible under § 1983." *Id*. at 694.  The Sixth

Circuit has instructed that, to satisfy the requirements of *Monell*, a plaintiff "must

identify the policy, connect the policy to the city itself and show that the

particular injury was incurred because of the execution of that policy." *Garner v.*

*Memphis Police Dept*., 8 F.3d 358, 364 (6th Cir. 1993) (internal citations and

quotations omitted).  There are four ways a plaintiff may prove the existence of a

---

[6] Evans offered evidence that she received certain legal settlements in support of her claim that the money found in Moore's residence was "legally obtained" and was not "drug money."  (ECF No. 65, PageID.3268-69, citing ECF No. 65-1).  She does argue that this evidence supports her claim that she holds a property interest in the subject property.  And notably, any such claim must be resolved by the Michigan Probate Court.  *See* Mich. Comp. Laws § 700.1303(1)(a) (The probate court has concurrent legal and equitable jurisdiction to determine a property right or interest in regard to the estate of a decedent.).  This court is not in the business of determining heirs or resolving property rights relating to a decedent's estate. *See Osborn v. Griffin*, 865 F.3d 417, 434 (6th Cir. 2017) (citing 13E Charles A. Wright & Arthur R. Miller, *et al*., Federal Practice and Procedure § 3610 (3d. ed. 2017 supp.)) (The probate exception is a judicial doctrine that prohibits federal courts "from exercising jurisdiction over certain conflicts involving property subject to a state court probate proceeding.").

municipality's illegal policy or custom: "(1) the existence of an illegal official policy

or legislative enactment; (2) that an official with final decision making authority

ratified illegal actions; (3) the existence of a policy of inadequate training or

supervision; or (4) the existence of a custom of tolerance or acquiescence of

federal rights violations."  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Defendants move to dismiss the *Monell* claim under Rule 12(b)(6).

Plaintiffs' amended complaint contains the following allegations regarding their

*Monell* claim:

> 33. Defendants' conduct failed to conform to [sic]
> requirement of protecting and adhering to the
> constitutional rights of Plaintiffs alleged as violated
> herein.
>
> 34. Defendants' conduct, as outlined above, caused the
> deprivation of federal rights belonging to Plaintiffs by
> Defendant Warren Police Departments own policy,
> custom or practice.

(ECF No. 46, PageID.1396).  In further reviewing the amended complaint, it is

apparent that the "policy" complained of is identified in the procedural due

process claim: "Defendant City of Warren's policy and practice of providing

constitutionally inadequate notice to property owners after the seizure violates

the procedural due process protections of the Fourteenth Amendment to the U.S.

Constitution."  (ECF No. 46, PageID.1397).

A custom or policy claim may only be brought when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. A plaintiff must show that the alleged conduct qualifies as a policy because *Monell* municipal liability may attach where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 690. *Monell* liability may also attach where a plaintiff alleges "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id*. at 690-91. A § 1983 plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue*. Memphis, Tenn. Area Local. Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004).

Plaintiffs do not allege that there is an official written policy regarding providing allegedly inadequate notice to property owners after evidence is seized. Thus, the court will examine if Plaintiffs have sufficiently alleged a custom of tolerance claim. For purposes of *Monell* liability, a "custom" is a practice that "may fairly subject a municipality to liability on the theory that the relevant

practice is so widespread as to have the force of law," even though it is not formally approved.  *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495-96 (6th Cir. 2008) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403-404 (1997)); *see also Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996) ("In short, a 'custom' is a 'legal institution' not memorialized by written law.") (citing *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993)).  For a custom of tolerance claim to survive a motion to dismiss, a plaintiff must "demonstrate[ ] a pattern … of similar claims ...." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005)).  For example, a "purported failure to discipline a single officer, as opposed to a systematic policy, cannot support a claim of municipal liability." *Sexton v. Kenton Cnty. Det. Ctr.*, 702 F.Supp.2d 784, 791 (E.D. Ky. 2010) (citation omitted).  Plaintiffs' custom of tolerance claim is based on the actions of a single official allegedly failing to give constitutionally adequate notice to Plaintiffs.  Further, their complaint is devoid of any factual allegations supported by any widespread unconstitutional custom or describing any other instances of constitutionally inadequate notice being provided to anyone else.  Thus, the *Monell* claim fails and must be dismissed.

F.     Conversion Claim

A "sheriff or court officer who unlawfully seizes personal property is, in the absence of governmental immunity, liable for conversion, even if he or she does so in the execution of a court order."  *Aroma Wines & Equip, Inc. v. Columbian Distribution Servs., Inc*., 497 Mich. 337, 352–53 (2015) (citing *Kenney v. Ranney*, 96 Mich. 617, 618 (1893)).  Under Michigan common law, a claim for conversion requires "a distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.'"  *Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.*, 178 Mich. App. 570, 575 (1989) (citing *Nelson & Witt v. Texas Co.*, 256 Mich. 65, 70 (1931)).  When the alleged conversion involves money, an action cannot be maintained "unless there is an obligation on the part of the defendant to return the specific money entrusted to his care."  *Id.* (citing *Garras v. Bekiares*, 315 Mich. 141, 148 (1946)).  A plaintiff may sue "for the conversion of funds that were delivered to the defendant for a specified purpose, but that the defendant diverted to his or her own use."  *Tooling Mfg. & Technologies Ass'n v. Tyler*, 2010 WL 5383529, at *10 (Mich. App. Dec. 28, 2010) (citing *Hogue v. Wells*, 180 Mich. 19, 24 (1914)).  The money given to the defendant does not need to be specifically earmarked for its return, but it must have been obtained "without the owner's consent to the creation of a debtor and creditor relationship."  *Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.*, 178

Mich. App. 570, 575 (1989) (citing *Hogue v. Wells*, 180 Mich. 19, 24 (1914); 89

C.J.S., Trover and Conversion, § 23, p. 541).  Similarly, a claim for common-law

conversion requires that the defendant's initial exercise of domain over the

property was, in fact, wrongful."  *Lawsuit Fin., LLC v. Curry*, 261 Mich. App. 579,

591-92 (2004).

 Defendants contend that there is no evidence to support a conversion

claim against Skridulus.  First, Defendants point out that the property at issue was

lawfully seized pursuant to a duly authorized search warrant and is being held as

evidence pursuant to Mich. Comp. Laws § 780.655.  The property remains in the

custody of the Warren Police Department.  (ECF No. 69, Audit Trails for Evidence

Tag Numbers).  Second, Defendants argue that Plaintiffs offer no evidence to

create any issue of fact as to whether Skridulus committed an act of converting

property for his personal use.  According to Defendants, Ms. Evans' testimony is

not sufficient to create a genuine issue of material fact.  Evans testified that

Moore regularly counted the money in front of her and the last time he counted it

in front of her was about a week before his murder.  (ECF No. 60-6, pp. 19-20).

Moore said it totaled $200,000.  (ECF No. 60-6, p. 55).  Evans also testified that a

photograph of Moore holding a stack of cash allegedly taken on August 20, 2020

supports that there was at least $200,000 in the Otis Ave. residence but admits

that there is no way to tell exactly how much money is in the photograph.  (ECF

No. 60-6, pp. 25-26, 27-28; and Transcript Exhibit 2).[7]

"'[I]t is well settled that only admissible evidence may be considered by a

trial court in ruling on a motion for summary judgment.'" *See Wiley v. United*

*States*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs.*,

Inc., 854 F.2d 1179, 1181 (9th Cir. 1988)); *see also Daily Press, Inc. v. United Press*

*Int'l*, 412 F.2d 126, 133 (6th Cir. 1969) (stating that hearsay evidence cannot be

considered on a motion for summary judgment).  The court requested

supplemental briefing as to whether Moore's statement was inadmissible

hearsay, which the parties provided.  *See e.g.*, *Madison America, Inc. v. Preferred*

*Med. Sys., LLC*, 548 F. Supp. 2d 567, 577 (W.D. Tenn. 2007) (finding that a witness'

deposition testimony regarding statements from his conversations with

prospective customers were inadmissible hearsay and could not be considered in

ruling on a motion for summary judgment); *Kouider on behalf of Y.C. v. Parma City*

*Sch. Dist. Bd. of Educ.*, 480 F. Supp. 3d 772, 782 (N.D. Ohio Aug. 19, 2020) (holding

that a witness' deposition testimony regarding a specific statement from a

conversation with her sister was inadmissible hearsay and could not be

---

[7] Neither party submits this photograph in support or in opposition to the pending motions for summary judgment.  Accordingly, the court will not consider the photograph.

considered in ruling on a motion for summary judgment).  The parties timely filed the requested supplemental briefing.  (ECF Nos. 78, 79).

Plaintiffs argue that because Moore is "unavailable" under Federal Rule of Evidence 804, his testimony is admissible.  However, Plaintiffs' argument only establishes that Moore is "unavailable" within the meaning of the Rule because he is deceased.  Plaintiffs do not explain how his out-of-court statement falls within the specific exceptions for hearsay from unavailable witnesses: (1) former testimony; (2) statement given under the belief of imminent death; (3) statement against interest; (4) statement of personal or family history; or (5) statement offered against a party that wrongfully caused the declarant's unavailability.  Fed. R. Evid. 801(b)(1)-(4), (6).  Accordingly, Rule 804 is not applicable here.  In this vein, Defendants argue that because Moore is deceased and "unavailable" as a witness, Plaintiffs must establish that one of the exceptions in Rule 804 applies. However, as Plaintiffs point out, the exceptions in Rule 803 apply whether the declarant is unavailable.  Fed. R. Evid. 803 ("The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness ….").  Thus, Plaintiffs are not required to establish an exception via Rule 804.

Plaintiffs also argue that Moore's statement falls within the hearsay exception found in Rule 803(1) for a present sense impression, which is defined as a "statement describing or explaining an event or condition, made while or

immediately after the declarant perceived it."  Fed. R. Evid. 803(1).  In *Winer v. Sturgill*, 2023 WL 4471479, at *8 (E.D. Ky. July 11, 2023), the court utilized a three-part test to evaluate whether an out-of-court statement fell within the present sense impression exception.  The court examined whether the proponent of the evidence established by a preponderance of the evidence that the declarants "(1) observed firsthand and participated in the event ... (2) that the statements were made while the declarants were observing the event or condition or immediately thereafter; and (3) the statements report what the declarants observed firsthand through the senses."  *Id*. (quoting *United States v. Morrow*, 2005 WL 3163803, at *2 (D.D.C. June 9, 2005)).  Evans' testimony satisfies this test in that she testified that she observed Moore counting the money and that his statement regarding the amount was made immediately after Moore completed the counting of the money.  Accordingly, Moore's out-of-court statement is admissible under Rule 803(1).

However, even if Evans' testimony were accepted as true, Defendants argue that Plaintiffs have submitted no evidence that $200,000 was seized by the Warren Police or that a portion thereof was converted to some purpose personal to any Defendant's interest, use, or purpose.  In response, Plaintiffs contend that the evidence cited above combined with Skridulus's testimony that he "cracked"

the safe in a room alone with is sufficient to create a genuine issue of material fact.  (ECF No. 60-7, PageID.3114).

In the court's review, Plaintiffs have not proffered sufficient material evidence to create a genuine issue of material fact.  While the non-moving party is entitled to have all reasonable inferences drawn in their favor, it is not reasonable to infer that the safe and the yellow bag contained a total of $200,000 based on Evans' testimony that *a week prior* to the murder, Moore told her that amount was contained therein.  Even assuming that Evans' testimony is truthful and accurate, in light of her testimony that Moore counted the money on a daily basis and the amounts apparently varied as she and her daughter would give Moore cash for safekeeping, and he too contributed money kept there from his job.  (ECF No. 60-6, p. 21) ("Q: Do you know where the money came from? A: Well, I mean, I have got several lawsuits.  My son had over $50,000 of my money. He worked.  Plus my daughter worked and she gave him money.") (*id*. at 23) ("Q: So all the money came from you three? A: Yes.").  Accordingly, a reasonable inference cannot be drawn that there was $200,000 in the yellow bag and safe based solely on Evans' testimony that that amount was there a week prior to Moore's murder.  Evans' evidence does not rise above mere speculation, which cannot create a genuine issue of material fact.  *See Kelly v. Warren County Bd. of*

*Comm'rs*, 396 F. App'x 246, 250 (6th Cir. 2010) ("mere speculation does not create a genuine issue of material fact to overcome summary judgment").

## IV.    CONCLUSION AND ORDER

For the reasons set forth above, Plaintiffs' motion to dismiss the counterclaim is **GRANTED**, Plaintiffs' motion for summary judgment on the counterclaim is **DENIED** as moot, and Defendants' motion for summary judgment on the takings claim, the *Monell* claim, and the conversion clam is **GRANTED**, but their motion for summary judgment on the substantive and procedural due process claims is **DENIED**.  Finally, Katrina Evans' due process claims are **DISMISSED**.  Because none of the claims brought by Evans individually survive, she is **DISMISSED** as a Plaintiff in this matter.

**SO ORDERED**.

Date: January 29, 2024                    <u>s/F. Kay Behm</u>
                                          F. Kay Behm
                                          United States District Judge